# CUDDY LAW FIRM, PLLC
## SPECIAL EDUCATION AND SPECIAL NEEDS PLANNING ATTORNEYS

ANDREW CUDDY
MANAGING ATTORNEY

June 29, 2022

JUSTIN CORETTI
ASSOCIATE ATTORNEY
JCORETTI@CUDDYLAWFIRM.COM
DIRECT DIAL 315-370-2404

Hon. Paul G. Gardephe
40 Foley Square, Room 2204
New York, NY 10007

Case:   *N.G., individually and on behalf of M.F., a child with a disability v. New York City Department of Education*, Case No. 1:21-cv-8488

Dear Hon. Gardephe:

With reference to Chief Magistrate Judge Cott's Order at ECF 25 ("…Counsel are directed to think how best to work toward consensual resolution of these fee disputes rather than litigation…"), Plaintiff respectfully requests—and acknowledges the irony of requesting—a <u>conference to address a potential combined motion</u>, under Fed. R. Civ. P. 1 and 42 and Fed. R. Evid. 706, for issue consolidation and a court-appointed expert, altogether concerning the current prevailing rates for IDEA litigation in the S.D.N.Y. Your Honor currently presides over the plurality of open, unbriefed CLF fee actions, collectively involving about a tenth of the over $1.17 million claimed hearing-level fees (not to mention federal fees-on-fees) across such actions at the pre-briefing stage,[1] although both requests—being matters of court administration—if ultimately accepted here, could be addressed and accepted *sua sponte* by the other S.D.N.Y. courts.

Our office attempted a meet-and-confer on a draft of this letter, and opposing counsel has officially, today, indicated only that "Defendant will not agree to your requests and will oppose if you file a letter motion." Yesterday, we reached opposing counsels' Senior Counsel Stephen Kitzinger, who was involved in prior efforts to resolve all of the CLF-DOE fee disputes and who, while stating it was not his decision to make, indicated that the motion would likely be opposed because courts are still issuing fee decisions and rates are not scientific.

**Relevant Background**

Plaintiff is one of dozens of parents of children with disabilities represented by and seeking fees from Defendant DOE as their only means of payment to their counsel CLF; and in this action,

---

[1] The actions at such stage are: *A.M.* (20-cv-8381-SLC), *D.H.* (21-cv-9453-ALC-JW), *R.A.* (21-cv-11188-ALC-SN), *L.M.* (21-cv-11175-AT-BCM), *L.R.L.* (21-cv-11189-ER-GWG), *S.M.* (21-cv-7039-ER-KHP), *D.R.* (22-cv-5-GHW-RWL), *J.S.* (21-cv-11178-JGK-KHP), *B.C.* (21-cv-11219-JPO-BCM), *Y.S.* (21-cv-10963-JPO-OTW), *A.G.* (21-cv-11191-KPF-KHP [motions due 7/15/22]), *H.W.* (21-cv-8604-LJL-SN), *F.N.* (21-cv-11177-MKV-GWG), *M.J.* (21-cv-11216-PAC-SDA), *J.P.* (21-cv-10961-PAE-SN [motions due 7/18/22]), *R.M.* (21-cv-11210-**PGG**-DCF), *N.G.* (21-cv-8488-**PGG**-JLC), *R.G.* (22-cv-2048-**PGG**-RWL), *M.R.* (21-cv-11185-**PGG**-SN), *A.C.* (22-cv-24-RA-RWL [motions due 7/1/22]), *E.W.* (21-cv-11208-VEC-GWG), *O.A.* (21-cv-11199-VEC-SN [fee motion due 7/8/22]), *M.S.* (22-cv-6-VSB-BCM).

is specifically seeking fees for her second case represented by CLF, with the experience-based expectation that future representation by CLF in IDEA hearings are likely, including because her son has multiple future years in DOE schools. The Footnote 1 actions are in addition to numerous others that are either fully or partially briefed under dispositive motion practice, an even further set of cases that have appeals gathered before the Second Circuit, and over 100 fee claims by CLF clients who have not yet commenced their own actions.

Judge Cott's Order at ECF 25 first cites *S.J. v. NYC DOE*; specifically, the Summary Order[2] affirming the exercises of discretion by the district court in 2021 WL 100501 (Jan. 12, 2021) and 2021 WL 536080 (Jan. 25, 2021) (Schofield, J.), both Orders being under the same caption. The January 12th decision returned to that plaintiff the only 0.6 hours of administrative due process time recommended by a magistrate judge for reduction, and otherwise adopted the magistrate judge's hourly rate reductions and federal litigation time percentage-reductions. The Report and Recommendation had noted an amount claimed for the administrative proceedings ($27,811.29), below what DOE eventually became willing to settle for after CLF accrued time with negotiations based, in part, on "some of Defendant's tactics in this litigation [that] drove up the number of hours billed by [the p]laintiff." 2020 WL 6151112 *1-2, 6 (S.D.N.Y. Oct. 20, 2020).

In the other fee decision cited by Judge Cott (*D.P. v. NYC DOE*, 2022 WL 103536 *6 [S.D.N.Y. Jan. 10, 2022]), Judge Failla—during the pendency of the appeal in *S.J. v. NYC DOE*—more directly addressed the situation, acknowledging dueling perspectives between the parties that CLF clients previously settled more frequently because DOE had made more reasonable offers and, on the other hand, DOE felt that courts were frequently cutting the billing by both hours and rates. Judge Failla "observe[d] that there is little utility in the current stalemate between the parties." *D.P.*, 2022 WL 103536 at *6. Since *D.P.*, CLF has been awarded its full rates (*Y.G. v. NYC DOE*, 2022 WL 1046465), adding to its ever-increasing amount of evidence supporting its rates; and, on the other hand, DOE has continued to receive large reductions to CLF's rates and, sometimes, hours. For instance, some courts will make a federal billing reduction without administrative reduction, whereas others, on the stated basis of reductions made in earlier decisions, have divided such reductions in about half and applied them to both proceedings.

There are currently 16 fee decisions involving CLF and the DOE on appeal before the Second Circuit, the earliest 14 of which will be heard in tandem, with a fifteenth appeal involving the Yorktown Cent. Sch. Dist., where CLF's client was the prevailing defendant. Collectively, the decisions on appeal represent a range of proportions from 32% (*R.P.*, 2022 WL 1239860 [Apr. 27, 2022]) to 72% (*Bd. of Ed. of Yorktown Cent. Sch. Dist.*, 2022 WL 831831 [Mar. 21, 2022]) to 90% (*Y.G.*, 2022 WL 1046465 [Apr. 7, 2022]); and with *S.J.*, represent two sets of District splits (rates and, noted above, hours). As to rates for experienced counsel and scaffolding downward from that point, the split in the S.D.N.Y. can be summarized, as follows:

---

[2] Per notice of the Second Circuit (Circuit Index 21-240, Doc. 73 [Summary Order and Judgment], 76 [Mandate]), which does not appear on Westlaw, "Rulings by Summary Order do not have precedential effect. Citation to a Summary Order…is permitted and…in a document filed with [the Second Circuit], a party must cite…(with the notation "Summary Order")." (Emphasis added.)

      a.      A "$350 to $475 range" used in *S.J.* (2021 WL 100501) and *M.D.* (2021 WL 3030053), showing a therein-cited range of rates in 2018-2019 CLF/DOE decisions: *C.D.* (2018 WL 3769972), *M.D.* (2018 WL 4386086), *C.B.* (2019 WL 3162177), and *R.G.* (2019 WL 4735050). These rates were largely repeated as "recent" in decisions for *H.C.* (2021 WL 2471195) and *J.R.* (2021 WL 3406370), and after the split, continued in decisions for *L.L.* (2022 WL 392912), *H.A.* (2022 WL 580772), and *R.P.* (2022 WL 1239860).

      b.      A $400-420 range set by Judge Liman—in back-to-back decisions *M.H.* (2021 WL 4804031) and *A.G.* (2021 WL 4896227)—relying on the "passage of time" since the decision in *R.G.*, as well as on DOE's outside counsel retainer agreement; and in a change from *J.R.*, Judge Abrams (*V.W.*, 2022 WL 37052; *H.W.*, 2022 WL 541347) was the first to join. The decisions for *D.P.* (2022 WL 103536), *N.G.B.* (2022 WL 800855), and *C.S.* (2022 WL 831831) then followed. *See K.O. v. NYC DOE*, 2022 WL 1689760 *9 (May 26, 2022) ("Numerous judges have weighed in, with different figures").

      c.      A finding that CLF's requested $550 hourly rate is within a reasonable range (*Y.G. v. NYC DOE*, 2022 WL 1046465).

      In the motion papers across the above decisions, DOE's sole reliance for hourly rates has prior awards other than the *Y.G.* award. *See H.A.*, 2022 WL 580772 at *fn. 8 ("…best evidence of the reasonable prevailing rates for this litigation—are those set in cases most closely resembling this…by [CLF] in [S.D.N.Y.] in the past several years"); *but see M.H.*, 2021 WL 4804031 at *12-13 ("[DOE's] approach is also flawed…CLF is entitled to attorneys' fees based on the prevailing market rate…That rate is not ordinarily ascertained by reference to rates awarded in prior cases…Those cases consider rates approved in other decisions; they eschew, however, a rule of law that would find a rate reasonable and anything above it unreasonable simply because it has been applied in an earlier decision") (internal marks omitted); *see also* 20 U.S.C. § 1415(i)(3)(C) ("Fees…shall be based upon rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

      In progressively increasing case-to-case waves, CLF has provided—without the above courts (apart from *Y.G.*) finding sufficient—a variety of evidence, including: (i) declarations and affidavits by other local, disinterested IDEA practitioners; (ii) an expert on the general area of attorneys' fees; (iii) DOE's cumulative spreadsheets (obtained by NYS Freedom of Information Law request) of settlements paid by DOE on special education cases from January 2016 through July 2020, showing DOE's indication of the "principal biller" rate, totals for hours and costs, and the settlement; (iv) redacted billing records and retainers from its paying clients in IDEA and other special needs matters and court awards for fees in special needs cases; (v) Consumer Price Index inflation calculations for all IDEA fee awards since 1998, including a showing that an award to a particular local attorney, whose IDEA experience at that time less than CLF's partners currently have and whose general practice experience was comparable to what CLF's partners currently have, holds a current buying power that exceeds the buying power of that award in today's dollars; (vi) published surveys and statistics on New York City and other populous metropolitan areas, albeit focused on broader scopes of practice than IDEA litigation (but including other civil rights practice areas); (vii) comparative *Laffey* Matrix data; (viii) a New York City retainer agreement with outside counsel, which *A.G.* and following courts nevertheless stated was "consistent" with

the passage of time rate increase set in *M.H.*; (ix) comparison of prior approved rates for similar complexities of services by other firms across S.D.N.Y. non-IDEA case law and awards; and (x) affidavits attesting to the ongoing local decreases in acceptance of nonpaying IDEA clients.

As noted by Judge Liman in *K.O.*, the Second Circuit's Summary Order in *S.J.* has "taken pains to point out that the calculation of the appropriate fee award resides in the discretion of the district court and that its review is 'highly deferential.'" 2022 WL 1689760 at *9. Stated another way, for a time, the parties and the Court are on their own to figure this all out, while keeping in mind Judge Cott's point (ECF 25) that officers of the Court have certain obligations under Fed. R. Civ. P. 1 ("the just, speedy, and inexpensive determination of every action and proceeding").

**Court-Appointed Expert**

Court-appointed experts pursuant to Fed. R. Evid 706 are an inherent power "committed to the sound discretion of the district court." *Azkour v. Little Rest Twelve, Inc.*, 645 F. App'x 98, 102 (2d Cir. 2016) (summary order) (*citing Scott v. Spanjer Bros., Inc.*, 298 F.2d 928, 930–31 [2d Cir. 1962]). "The determination…is to be informed by such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view." *Eldridge v. Williams*, No. 10 Civ. 0423 (LTS)(RLE), 2012 WL 1986589, at *1 (S.D.N.Y. June 1, 2012); *see Bd. of Educ. of Yonkers City Sch. Dist. v. CNA Ins. Co.*, 113 F.R.D. 654 (Jan. 16, 1987) ("complex issues of the reasonable value of substantial attorney services"). This includes the need for an "alternative source of authority" when the "ordinary adversary process does not suffice". *Joint E&S Dists. Asbestos Litig.*, 830 F.Supp. 686, 693 (E.D.N.Y. and S.D.N.Y. Aug. 12, 1993). Depending on the volume and complexity of an issue, courts may appoint a panel to determine, *e.g.*, the likely volume and value of future claims, with such experts presenting evidence and testimony, subject to the parties' cross-examination and exhibits. *Joint E&S Dists. Asbestos Litig.*, 830 F.Supp. 686.

A single, court-appointed expert investigating and testifying to evidence of the prevailing rates in the community for IDEA litigation—especially for each action that includes consolidation on this issue—would alleviate a tremendous burden from the Court, counsels, and parties, in what has unfortunately become second major litigation. A three-way deadlock unnecessarily increases work in each case, including this one, for the parties and the Court; and any movement contributes to the evidence in the aggregate of cases. Even full court movement toward the "passage of time" approach would not account for how much the market has outpaced awards; and in any event, would sustain a heavy burden on the Court, as a steady flow of decisions in cases that could otherwise settle would be required annually. Similarly, while argument of the City's outside retainer has been partly accepted by some courts, there is no ability to foresee how the City or DOE might change future negotiations with outside counsels, having seen it used against them.

Moreover, while the Court's unenviable burden of disciplining markets enables it to "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" (*Arbor Hill Concerned Citizens v. Cnty. of Albany*, 522 F.3d 182, 184 [2d Cir. 2008]), the corollary "check and balance" is for attorneys to instead seek out paying clients after wrapping up non-paying clients' final cases. *Cf.*, *Y.G. v. New York City Dept. of Educ.*, 2022 WL 1046465 *1 ("There are not many lawyers who take IDEA cases, perhaps because the fee structure has been so tight"); *see also S.W. v. Bd. of Educ. of the City of New York*, 257 F.Supp.2d

4

600, 605 (S.D.N.Y. Feb. 23, 2003) ("…If attorneys are compensated at a lower rate for administrative hearings, fewer attorneys will be willing to provide such representation, thereby rendering the right to representation at an IDEA hearing meaningless. In an area where there is already a dearth of lawyers to provide critically needed legal assistance to parents and children, such a result would undermine the very purpose of the IDEA") (emphasis added).

The request is not for lack of trying, inability to obtain evidence, nor any other furtherance of "partisan interests of any party". *C.f.*, *Rowell v. City of New York*, 2017 WL 11569520 *1 (S.D.N.Y. Aug. 29, 2017) (Nathan, J.) (denying court-appointed DNA expert to advance plaintiff's tenuous theory that absence of DNA would tend to show that police planted drugs). All of the rates requested have been awarded and a variety of evidence has been proffered in their support; and on the other hand, while non-binding, DOE uses prior awards as evidence of the rates awarded therein.

A court-appointed expert on the issue of prevailing rates for IDEA litigation in the S.D.N.Y. would assist the Court in determining, from amounts already independently evinced to be paid, settled, and awarded, which such rates comprise the presumptively reasonable range of minimums for certain types of IDEA litigation and experience levels of practitioners. The range to be found by the expert does not necessarily benefit nor harm N.G. or her counsel, regardless of any confidence to bring the motion in the first place and CLF's detailed knowledge of the community of practitioners. In fact, the court-appointed expert will be expected to reach conclusions that will both take some amount of time and significantly reduce the time necessary for CLF and the Court to expend on fee litigation—a point that shifts (rather than eliminates) attorney work hours back to where they largely should be: addressing substantive, non-fee IDEA claims. Nor does it necessarily benefit or harm DOE, which might ultimately pay higher rates found by the expert but also receives a definitive, bright-line finding on prevailing rates, to ensure early settlements for the next several years, saving millions in attorney resources and federal fees.

**Consolidation**

The Court has broad discretion over consolidation and may invoke Fed. R. Civ. P. 42(a) *sua sponte*. *Devlin v. Transp. Comms. Intern. Union*, 175 F.3d 121, 130 (2d Cir. 1999). Consolidation would "prevent[] inconsistent results and promote[] efficiency," avoiding needless duplication. *Ajaka v. Branick Industries, Inc.*, 1996 WL 103973 *2 (S.D.N.Y. Mar. 11, 1996); *Feldman v. Hanley*, 49 F.R.D. 48, 50 (S.D.N.Y. Oct. 20, 1969). It "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Feldman*, 49 F.R.D. at 50 (internal marks omitted). Consolidation on the above issue of an expert for rates will facilitate broad settlements, and even where it does not, it will dramatically limit necessary briefing and assist the respective courts in gauging rates in light of more technical, practice-specific *Johnson* factors and case-specific variables.

Thank you for your consideration of this matter.

Respectfully,

s/ _____
Justin M. Coretti

5693 SOUTH STREET ROAD, AUBURN, NEW YORK 13021 • FAX: 1-888-282-7785

**MEMO ENDORSED:**

Plaintiff requests "a conference to address a potential combined motion" seeking (1) consolidation of all IDEA fee actions in this District involving the Cuddy firm and which are "at the pre-briefing stage"; and (2) "a court-appointed expert [] concerning the current prevailing rates for IDEA litigation in the S.D.N.Y."  (Pltf. Ltr. (Dkt. No. 29) at 1 (emphasis omitted))

As to consolidation, pursuant to Rule 13(a)(1)(D) of this District's Rules for the Division of Business Among District Judges, where a plaintiff believes that "absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties, or witnesses," at the timing of filing, the plaintiff "shall disclose on form JSC44C [the civil cover sheet] any contention of relatedness and shall file a Related Case Statement stating clearly and succinctly the basis for the contention."  S.D.N.Y. R. for the Division of Business Among Dist. Judges 13(a)(1)(D), 13(b)(1).  Where a plaintiff so indicates on the civil cover sheet, the "case . . . designated as related shall be forwarded to the judge before whom the allegedly related case . . . having the lowest docket number is or was pending, who shall decide whether to accept or reject the case."  Id. 13(b)(2).  "Civil cases shall not be deemed related merely because they involve common legal issues. . . ."  Id. 13(a)(2)(A).

Here, none of the plaintiffs in the later-filed cases listed by Plaintiff (see Pltf. Ltr. (Dkt. No. 29) at 1 n.1) checked the box on the civil cover sheet indicating that the newly filed case was related to the instant case.

The related case procedure exists for a reason.  This Court cannot order the consolidation of cases that are pending on other judges' dockets.  Each judge controls the cases on his or her docket.

In any event, consolidation is not appropriate here.  "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases."  Hall v. Hall, 138 S. Ct. 1118, 1131 (2018).  In a fees-only IDEA case such as this, the court's task is to determine "'the rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished,'" and to "'make a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'"  N.A. v. N.Y.C. Dep't of Educ., No. 21CIV2643PGGSLC, 2022 WL 17581774, at *3–4 (S.D.N.Y. Dec. 12, 2022) (first quoting 20 U.S.C. § 1415(i)(3)(C); then quoting K.O. v. N.Y.C. Dep't of Educ., No. 20 Civ. 10277 (LJL), 2022 WL 1689760, at *12 (S.D.N.Y. May 26, 2022)).  The "kind and quality of services furnished" and the "useful[ness] and reasonabl[eness]" of the hours billed will vary from case to case, depending on the facts and circumstances of each case.  The fact-intensive inquiry necessary to address these issues does not lend itself to consolidation, because consolidation would offer little in the way of judicial economy.

As to a court-appointed expert, a routine motion for attorneys' fees for work performed in an IDEA case is not one of the "exceptional cases in which the ordinary adversary process does not suffice."  In re Joint E. & S. Districts Asbestos Litig., 830 F. Supp. 686, 693 (E.D.N.Y. 1993).  Plaintiff has cited no case in which a court has appointed an expert to offer an opinion concerning an appropriate award of attorneys' fees in an IDEA case.  The only attorneys' fee

case Plaintiff cites – Bd. of Educ., Yonkers City Sch. Dist. v. CNA Ins. Co., 113 F.R.D. 654 (S.D.N.Y. 1987) – is not on point.  That case involves a dispute between a board of education and its liability insurer after a years-long, multifaceted anti-discrimination case against the board of education. The IDEA litigations at issue here are not comparable to that case.

For all these reasons, Plaintiff's motion (Dkt. No. 29) is denied.

Defendant's motion for a stay (Def. Opp. Ltr. (Dkt. No. 33)) is denied as moot.

The parties are directed to resume settlement discussions in light of this Court's decision in N.A., 2022 WL 17581774.  If they believe it would be helpful, the parties may request another settlement conference before Magistrate Judge Cott.  By **January 30, 2023**, the parties will submit a joint letter reporting on the status of their settlement discussions.

The Clerk of Court is directed to terminate the pending motions (Dkt. Nos. 29, 33).

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

Dated:  December 29, 2022